Our last case for the morning is George Forsthoffer vs. Max Cohen&Sons Thank you. May it please the court, my name is David Perlman, representing the appellant, George Forsthoffer, and I would like to reserve three minutes for rebuttal. Could you keep your voice up a little? Okay. Thank you. This is an age discrimination case, and we're at the, there's a three-step analysis to determine whether summary judgment should be granted. Summary judgment should not have been granted in this case, and we're really at the third step of the analysis, which is whether the employer's reasons, non-discriminatory reasons for the termination, are pretextual. That was what was briefed before the lower court, although the district court erroneously ruled, said that the argument was whether there was a prima facie case to begin with, which was an error on the district court's part. And because the appellee has conceded that we have established a prima facie case. Mr. Forsthoffer was 59 years old when he was terminated. We got the facts here. Okay. At the summary judgment level, you have Mr. Philip Cohen's affidavit. Yes. And he passed away after the affidavit was given. That can still be treated as part of the summary judgment record, can it not? No, it can't. The affidavit is not admissible on summary judgment because of his death. On what grounds? Well, the principle behind it is that any evidence offered on summary judgment should be the content of an affidavit should be admissible at trial. In other words, an affidavit in and of itself is clearly hearsay. But if the person is still alive, then there's a prospect of that person testifying to the same thing at trial. But if somebody has since died, there's no way of getting the content of that affidavit admitted at trial. There's two cases that decided the issue specifically with respect to the death of somebody who had provided an affidavit for summary judgment. One is Crittenden v. Children's Hospital for the Western District of New York, the District Court for the Western District of New York, and there's a Lexis citation of 2004-12944. That case was based on Second Circuit cases that articulated the principle that I just mentioned. And what's the second case? The second case is Hatzell, H-A-T-Z-E-L, and Buhler, B-U-H-E-L-L. Oh, Hatzell and Buhler. Right, from the District Court for Delaware. That citation is 1992, Lexis, 2001. Is this based on hearsay? Yeah. Well, the affidavit would be inadmissible as hearsay. And although affidavits are usable on summary judgment, if the content of the affidavit couldn't be admitted at trial, then the affidavit can't be used at trial. And interestingly, in one of those cases, the affidavit was the person's deposition was taken. The affidavit was more specific and more pertinent to the summary judgment issues than anything that came out at the deposition. So the affidavit was used at summary judgment, and the court held that the affidavit could not be used at summary judgment, but the summary judgment motion could be reconsidered looking only at the content of the deposition. Are you suggesting that there's no case that holds that a declarant who becomes unavailable by virtue of death but has left a sworn affidavit behind would not be able to get that in the record? Even under the catch-all provision of the hearsay rules in the federal court? That strikes me as a surprising position to take, but that's your position. It would never come in, is that it? It would be highly unfair because there was no opportunity actually to – it would be a different situation maybe if the deposition was taken, which was this case and it was still held to be inadmissible, because at least in that situation we would have had the opportunity to ask Mr. Cohn questions. There was deposition discovery, right? There was, and the deposition for Mr. Cohn was scheduled and postponed and postponed and postponed, and before he ever could be deposed, he died. There was some briefing in the lower court, which it's really not before this court so I won't get into it, but his deposition was scheduled and postponed multiple times and then he died. You took a position in your opening brief that Mr. Forsthoffer was never warned that his job was ejected, but there was evidence in the record, in fact, lots of it, that Mr. Forsthoffer's work was the subject of repeated complaints by coworkers and supervisors, right? I mean, he was the subject of, according to the record evidence I saw, repeated comments about your work product is not good, can't use it, it's getting bad, it's getting worse, et cetera. If that, in fact, is the state of the record, doesn't that constitute a warning that your job's in jeopardy to people? Well, two things. First, none of the warnings were in writing and there was a written employment manual that the company had to give these warnings in writing. And apart from that policy, it's also customary to provide the warnings in writing, according to our expert. Evidently not in this company. Well, there were written, no, there is evidence that there were written warnings were given. There's a citation, it's in one of the briefs. There's also a lot of evidence that no warnings were generally given to employees. I thought it was virtually undisputed that these people hardly ever gave a written warning. There were admissions that written warnings were given. The number of times that it was, the number of times and the frequency, I think. Set the policy aside and go to the question. Your assertion is this is a bolt out of the blue, and I'm trying to get you to respond to your opponent's assertion that, or what I take to be part of their argument, that Mr. Forsthoffer's work, product, had been a problem for many years and he knew it. Right. I think that actually helps our case. That's an important point in favor of our case. I don't think the evidence is that it got progressively worse. I don't think that's borne out by the record. The worsening aspect, which the appellee would like to rely on, is expressed most pertinently in the inadmissible affidavit, which is five to ten years. The rest of the testimony, there's no testimony that it got worse except over a period of ten years or 30 years. So your position is that his work may have been terrible, but they tolerated it for years so they couldn't fire him? No, not that they couldn't fire him. They tolerated it for so many years that the idea that his poor work is the reason for his termination is pretextual because it was in existence for such a long period of time, and he got progressively older, and then at the moment of his termination, he's given three statements of why he's being terminated. It's a little like adverse possession. If you work really badly for a long time, that's off the table. You can no longer fire somebody for working badly. That's not your real argument. Your real argument is they were lying because that wasn't it. I'm saying that wasn't the reason that he was terminated. I'm not disputing at this point whether his work was bad or wasn't bad. We can accept that as true, but we can't say that that reason for termination is pretextual and it's for a jury to decide. What is it that would allow us to find, aha, it was really age? What is it in the record that would allow us to do that? We have a remark by a man who happened by Philip Cohen's office at the wrong place and at the wrong time was told to tell Mr. Forsthoffer goodbye. He did so in terms that would make it appear that it was an age decision, yet he was not the supervisor and did not really have anything to do with ascribing a reason. So we have that for what it's worth. What else do we have that would allow us to say, aha, this was age discrimination? Right, well, I'll tell you what else we have, and then I'd like to go back and address the comment. There's also the fact that he was replaced by Tim Lafferty, who was 32 years old, and there's evidence in the record, in the appellee's brief, they give a host of other names of people who were doing these simple rails, but the testimony is that Tim Lafferty, even they admit, was initially the replacement, and he did a predominant amount of the work for two years, according to Richard Cohen's deposition. This is in the record. Was he hired to do that? He was hired. Was Lafferty hired? I don't think the record. He just was there and it fell to him. I'm not sure. He was the replacement. I mean, whether he was hired or not. Well, usually what happens, usually the concept of replacement is someone is let go and someone is hired to take his place as compared to someone has to fill in on the person who happens to do that. From the existing staff. From the existing staff happens to be someone younger. And then eventually there were, I think, seven people under the recording. Okay, go ahead. The fact that there were no written warnings is another factor, when that was a policy and also a custom and supported by an expert report. How can you say that your expert report says it's a custom and policy? This expert looks like the expert read a manual and said this is a custom policy. The people who actually worked there are saying exactly the opposite. They're saying we hardly ever gave a written warning. It just wasn't the way things were done. It might have said that on a piece of paper in somebody's office, but that isn't the way things really operate. How does an expert witness trump factual evidence about what custom and practice is? Right. Well, it was a written policy to requirement, for one, and there was evidence that people gave written reports. And I think he also said in a situation where somebody is within the age that would be discriminatory, it's even more important to provide a written notice, written warnings. I'm not trying to contend anything about what is or isn't good practice, Mr. Pullman. I'm just trying to get to this point. You seem to be making the argument that as a matter of fact, the way this company operated was with written warnings. I'm trying to get to what I understand to be the evidence in the case, and the evidence I see in the record is exactly the opposite. You have an expert witness who doesn't have any factual knowledge personally, who says, I see the policy was supposed to give written warnings, but the people who are actually working there say, that isn't the way things really work. And I don't see any factual evidence, but you could certainly point it to me because I might have missed it, where somebody who actually worked there said, no, it was the custom and practice to give written warnings. I don't see that. I see, yeah, sometimes we did it, but generally we just didn't operate that way. There was a citation in my brief, I don't have it on hand, where some of the supervisors and one of the cones admitted to giving written warnings. So nobody used the word custom and practice, but it was something that was done. Let me ask you this. You've clearly got a company here that operates, well, it has a manual in place. It operates pretty much without anything going into the record. It's a very small business. Right. You have Mr. Philip Cohen, who's sort of the benevolent dictator, if you will. Right. And you've got testimony that his son, Alan, for several years has been saying repeatedly, you've got to get rid of this guy, he doesn't do a good job. Yes. And then on the day he gets fired, Philip Cohen says, go talk with Alan. Alan says, go talk with Hamilton. Hamilton says, look, we're trying to get a bunch of younger guys together that really want to do iron work. But for that comment of Hamilton, what else do you really have, other than the fact that it's a typical small company that doesn't keep records? Right. The three things that I mentioned, the fifth thing, four things that I mentioned, the fifth is raises for Mr. Cohen. Raises got progressively smaller. They got progressively smaller, but they did give him raises. Well, no wage in 2004 and 2005. Well, one year there was no raise. That's correct. But I wouldn't diminish the statement from Hamilton because he was the person who was charged by the company, by the principals for delivering the message. I mean, there was no other voice. Otherwise, he had nothing to do with it, right? I mean, Mr. Philip Cohen, a man about 80 years old. By the way, let me ask this. Is the district court allowed to draw any inference at all about age discrimination from the fact that the person making the decision was about 80? No, I think that's incorrect because that really focuses on what evidence you don't have and what we should be focusing on what evidence you do have. There's an analogy to another point that the appellees made where they said younger people were not treated any differently from older people. Well, of course, if we had that evidence, that would help our case, but we don't have that evidence, but that doesn't mean it hurts our case. How about the fact that six months later they hired someone who was 75 and about 14 months later they hired somebody who was 68? Is that? Well, we don't have to show that the company had a general policy of age discrimination. The question is was there age discrimination in his case, and the real question is we don't also have to eliminate all the other reasons for his termination. The real question is whether age was determined in it. In making the case that it was pretextual, don't these other things have a valid place in consideration of a district court looking at the evidence? I think the only thing that has a valid place are the reasons asserted by the company for his termination. If you say, for example, that Cone was 87 years old and therefore there was no age discrimination, it's analogous to saying it doesn't follow that if he was not 87 years old there would not be age discrimination. Of course, it does make Mr. Hamilton look like he doesn't know what he's talking about when he says we're looking for a bunch of younger guys, unless your definition of younger guys is awfully broad. If you're referring to 75- and 68-year-old people. I don't think we have to take a colloquial saying at its face that he wanted to really hire a bunch of younger guys. They wanted someone younger. And I think that ultimately we come to the point of – Keeping in mind that that's Forsthoffer's testimony at deposition. That was not – I think it was denied by Hamilton, was it not? I'm not aware that it was denied, but even if it was denied because we're at the summary judgment stage, the question is is this reasonable for a jury to decide? That's the real question. Is this the kind of case that whether we agree that he should have been terminated or shouldn't have or there were grounds. Is this the kind of case that a jury should have decided whether the age factor tipped the balance and was therefore determinate? That's all we have to show. That's why Judge Ambrose's question is particularly pertinent. Do you have, other than Mr. Hamilton's comment, do you have any evidence that it was pretextual when they let Mr. Forsthoffer go? And I'm not suggesting that this wasn't a traumatic thing for Mr. Forsthoffer and his family, that there was obviously a long relationship with the company and that after decades with an employer, you might feel I can be a little freer with my opinions or something like that and then find out, well, I guess I was wrong, would be a shock and a distressing thing. I'm not trying to discount the real human aspect of this. I'm trying to get at what evidence is there that they were making it up when they said it's bad work. Other than the comment, there's four things. And granted, you know, one could argue back and forth about the strength or validity of those four things, but I think the arguments should be made to a jury. There was a replacement for two years by the 32-year-old person. There was the absence of the written warnings. There was actually the fact that his attitude and his performance were in question for such a long period of time and they never caused a termination or threat of termination before, and the only thing that changed was age works in our favor. It was half, according to the evidence, half of the stuff he was producing they couldn't use. I mean, that's – and there doesn't seem to be a rebuttal to that. Now, at least not in the record. I'm sure Mr. Forstaffer, if you were, you know, testifying and asked that specific question, might have a different estimate, but in the record, it looks like things have deteriorated to the point where you're having close to a 50% rejection rate. But that was disputed, as a matter of fact, you know, before the lower court in the record. It wasn't raised – we weren't rebutting the performance, you know, we weren't rebutting that on appeal because, in a sense, that doesn't really go to the issue of pretext. It doesn't. Whether somebody's work is so bad that they're – If it's been – whether you say 50% of his stuff was bad, 30%, 20%, if there's no evidence that it wasn't getting progressively worse, there was no single incident that caused his termination. You know, 10 years – the record says it best for the appellee, his work was deteriorating over a period of 10 years, and there was no single factor, no single incident that caused his termination. Except there is an explanation by Philip Cohn that finally got to such – or by Allen that he prevailed upon his father, who had been unwilling until that time. So it was almost like the straw that broke the camel's back. I mean, that's the explanation. Something – for some reason that's unexplained in the record, Allen Cohn wanted him terminated and prevailed upon his father. But why isn't absolutely clear. All right, we'll hear from you on that one. Thank you. Good afternoon. May it please the Court, my name is Caroline Austin, and I represent the appellee on this appeal, the iron shop. What is your view as to whether we can have this affidavit considered as part of the summary judgment record, affidavit of Philip Cohn? I think the affidavit could have been considered on summary judgment, could have been considered by the district court on summary judgment. It is statements clearly by a party. Philip Cohn is the equivalent of the iron shop, and he is the sole decision maker in this case, and I do think – But that has nothing to do with its admissibility as such. I mean, it would be admissible as a party, but the question is, is it hearsay? Are you aware of these cases that were cited by – Not specifically, Your Honor. I apologize for not being aware of the specific cases. But I will tell you, I mean, we do think it would be admissible, either as an exception to the hearsay rule, but really as we briefed at the lower court, at the district court level, under the residual exception under 807. It has tremendous inherent notions of trustworthiness. I mean, Philip Cohn is the decision maker. All of the statements in the affidavit that he gives are actually corroborated by every other witness in the case. All the iron shop witnesses say the same thing. His performance was getting progressively worse, and age had nothing to do with it. If you eliminated the affidavit, don't you lose your only direct explanation as to why Forsthoffer was terminated? Actually, I don't think so. I think summary judgment is appropriate with, certainly, the affidavit, but it certainly is appropriate even without the affidavit, and that is because there is no genuine issue here as to any disputed fact. Well, there's a genuine issue. I mean, Philip Hamilton says go to Allen. Allen says go to, I'm sorry, Philip Cohn says to go to Allen Cohn. Allen Cohn says to go to Hamilton, and Hamilton makes, if what he said is true, or if what he's alleged to have said is true, it looks like we want younger folks, we want you out of here. Well, actually, Mr. Forsthoffer's testimony, I understand you have to accept it as true. Billy Hamilton does, to answer your question, Judge Ambrose denies that he ever made that comment, but yes, we do have to accept it as true. But you really need to go back to the record, and that's really what the central issue is in this case, and that is whether a single, uncorroborated, age-related comment by a nondecision maker, Billy Hamilton, is enough for Forsthoffer to have carried his burden, that age actually played a role in the decision. If you have an employee manual, and the employee manual says, if you're doing something wrong, we'll give you notice, in effect you have an opportunity to cure, and the manual is ignored, does that mean we have to ignore it too? Well, actually, I think the evidence in the record is it was ignored by everybody. I understand, but does that mean we have to ignore it, the court has to ignore it, the jury has to ignore it? No, I think you can accept that there was a written policy out there that said that written warnings should be given for poor performance. However, the undisputed record shows that the policy was not followed. The law is, I mean, the case law shows that while an employer's failure to follow its own written policies as to the plaintiff may be evidence of pretext, pretext isn't established if the employer fails to follow its own policy as to other employees, and certainly as to other younger employees. Counsel attempted to argue that this written policy was followed, but his assertion doesn't comport with the actual record. The two people that he was thinking about was Billy Hamilton and Richard Cohen, both of whom gave some testimony on the written policy. Richard Cohen testified that he issued just one written warning at some point in time, and he couldn't recall what the basis for that written warning was. He didn't say he issued the written warning pursuant to any written policy of the iron shop. He just happened to issue a written warning to someone, and Mr. Hamilton specifically hit this head on, and what he said was, I never issued a written warning before 2005 or 2006. Remember, Mr. Forsthoffer was terminated in 2005, and what Mr. Hamilton said was, and I wasn't even aware that there was a policy that existed while Mr. Forsthoffer was employed by us. So there is no record evidence that the company was following its written policy to issue written warnings, so the absence of a written warning to Mr. Forsthoffer is not evidence of pretext. Now, Your Honors also noted that the raise issue, that is one of the principal arguments that Mr. Forsthoffer alleges shows an inconsistency, shows that our proffered reasons for his termination are not worthy of credence, but the undisputed record is that he received diminishing raises over a period of time, and the year that he received no raise in 2005 was the same year that he was terminated, and it's consistent with the iron shop's view that his performance had progressed to such a point where no raise was appropriate. What are we to make of the assertion that, well, Mr. Forsthoffer's testimony, that he was directly told we want younger workers, and your opponent's argument in essence that that creates a triable issue of fact. We're bound under some of the judgment standards to accept that that's the way things actually happen. Why is your opponent wrong in saying that that is evidence that requires this to be decided by a jury instead of a judge? Let me just tack on to that. When you have, in this case, the only contemporaneous explanation is that of Hamilton, that we want younger people here. That's the only contemporaneous explanation that's on the record right now. To answer both of your questions, which are related, clearly we have Mr. Hamilton's alleged comment, which I know he disputes, but we'll put that aside, and you have the iron shop's proffered reasons for his termination, which is progressively poor performance, attitude, and inefficiency of his work. The fact that there is an inconsistency there has to be considered among the totality of the circumstances, and the Supreme Court in Reeves instructs that that should be done. But even if you were to put this comment in the first prong of Fuentes, which is that he has to discredit the iron shop's proffered reasons by pointing to evidence that proves its proffered reasons are so weak, implausible, inconsistent, that a reasonable fact finder could find them unworthy of credence. You have to factor in, in the fact that Mr. Hamilton made this comment, that no reasonable fact finder could conclude that they're unworthy of credence because of all the other facts we have here. Just offering an inconsistent reason for termination is not sufficient under Fuentes. You actually have to, it must also be so weak that a reasonable fact finder could find them unworthy of credence. And why is it not so weak? It's not so weak because we all know, and it's undisputed on this record, that Mr. Hamilton had nothing to do with the decision. And so you have to weigh, you have to look at this fact that Mr. Hamilton was a non-decision maker, and there are a million facts that go to that point. Specifically, when you look at the record evidence, you have it being undisputed that Mr. Philip Cohen made this decision. That is never disputed by Mr. Forsthoffer. Forsthoffer admits he has no idea who made the decision, and in fact he even admitted that he thought that Billy Hamilton just came to communicate the decision. You have Mr. Hamilton testifying that he was not Mr. Forsthoffer's supervisor, that he did not even, you have Mr. Forsthoffer testifying that he didn't even know what role Hamilton played at the iron shop. You have Hamilton denying any involvement in the decision, never suggesting to Philip or Alan. What was Hamilton's decision? Mr. Hamilton at the time had just become a shop supervisor of some sort. But you also have to know the undisputed fact in this case is that Philip and Mr. Forsthoffer, they worked together. No one else supervised Mr. Forsthoffer, and that is an undisputed fact. He worked for Philip. It's so much so, it's so boxed in that way, that when Mr. Forsthoffer was asked sometimes to do other work, he first went to Philip to ask if it was okay. Philip was his supervisor. And so you also have the fact that Mr. Hamilton never suggested to either Philip or Alan that Mr. Forsthoffer be terminated. You have Hamilton testifying that he never gave Mr. Forsthoffer a performance review, never met with Philip Cohen or Alan Cohen for the purpose of reviewing Mr. Forsthoffer's employment. I mean, the record is loaded with undisputed facts that Mr. Hamilton's role was not to determine or decide whether and on what basis he would be fired. You don't seem to even attempt to defend the district court's conclusion that a crime of patient case wasn't made here. Is that – are we right to read that as you're conceding that there was a crime of patient case? Well, I can't defend the district court decision because he did get it wrong in the sense that we didn't argue that they failed to make a crime of patient case. We actually did concede that point. But I will tell you, when drafting that brief, I wrestled with the idea because it's not as clear as counsel suggests. In fact, Mr. Lafferty was not hired, as Your Honor asked, to replace Mr. Forsthoffer. But it's not the argument you're making here because you conceded it below. We did concede it below. And while I would suggest if you want to affirm on that basis, we would have no problem with that, but I don't think that you need – we are relying solely or really significantly on the crime of patient case. What we're really suggesting is that this single, uncorroborated comment does not prove that our proffered reasons for termination should be unworthy of please. It's not – although there is a contradiction, you have to consider the fact that Mr. Hamilton – what his role was and his role in the decision. Is there a fourth element in making out an ADA claim under our case law? And if so, what should it be? Because it seems like the case law is a little back and forth on that. It is. It is. What's your take on that? You could look – you could probably pull up 100 cases on age and look at the four elements of a proven patient case, and they all vary on that fourth element a little bit. The district court relied on one of an unreported decision, right? Bernhardt case? Yes. Do you think the Bernhardt case had it right? You know what? I think it's not inappropriate. I mean, it certainly makes sense. The reality is when you look at all the different cases, it's either replaced by someone who was younger. It's, you know, that we didn't treat any younger employees more favorably. So it's an either-or? I think it can be whatever facts fit the circumstances. I would suggest it could either be replaced by someone who was younger or that we didn't treat younger employees more favorably, to be honest, frankly. Or did treat younger. Or did treat younger employees more favorably. Correct. And what I do think, I think it's close, but we thought it was close enough that given the low burden that the plaintiff has on prima facie case that we would not rely on it exclusively or really even at all to argue summary judgment. The reality is you have this one single comment, and it may appear as though it is an inconsistency in the proffered reasons. But this is a very different case than L.B. Foster, for example, and EEOC versus L.B. Foster or the Abramson versus William Patterson College, which I know, Judge Rendell, you're very familiar with. This is a very different case because in those cases, what the Third Circuit found was that the plaintiff had established the employer's proffered reasons for the employment decisions were not worthy of credence because the decision-makers gave flip-flopping and contradictory reasons. The decision-makers said it was one thing, and then they turned around in the litigation and said a completely different thing. And what the courts there said was that this inconsistency at different points in time would enable a jury to infer that possibly it were suspicious. The reasons given are suspicious because they're varying and different depending on the point in time. This doesn't mean, what I'm suggesting does not mean that Mr. Forstaffer, that this court couldn't consider this comment. Clearly, it will, and it should. I think the central issue is what weight should we be given to this comment? Well, when you get into weight, then you're not a jury. Not weight. I don't mean weight. What I mean is... Because the comments, they certainly weren't from a temporal point of view. They weren't remote. It's the value of this evidence in this, really. The reality is that under the Supreme Court in Reeves, if we're going to look at the second prong, the Supreme Court in Reeves stated that under McDonnell Douglas, whether judgment as a matter of law is appropriate depends on a number of factors. The strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence which supports the employer's position. That could properly be considered. When you look at Reeves' case, and these three kinds of factors that need to be considered, you look at the probative value of the proof that the employer's reason was false. And as the district court did properly conclude, there's no evidence that the decision to terminate him was made by Mr. Hamilton. And when you eliminate that, you're left with a comment by someone who wasn't involved in the decision. I would also add, as to Judge Jordan's point, what do we do with this prima facie test? While we conceded that the prima facie case may have been met, I would say that the prima facie case is weak by the plaintiff, because in fact, as Your Honors all noted, he was not solely replaced by one person who was hired to take on his duties. He was replaced by anyone who was available to do the work, which included at least two people who were in their 70s and additional two people who were in their 50s. In addition, as Judge Rendell noted, I believe, we did hire three mechanics, which is his position. After his termination, we hired three mechanics, two of whom were in their 70s and one in their late 50s. And so what you have to look at is, as Reeves instructs, the strength of the plaintiff's prima facie case. It's weak, and that should be a factor in this court's decision. And so what I would say is that under Reeves, where Reeves instructs that you look at the totality of the circumstances presented by this case, we would suggest that the district court got it right and found that no reasonable fact finder could conclude that age was a determinative and motivating cause of Mr. Horsthoffer's termination. Thank you, counsel. Thank you. I would submit that in this case there are inconsistent reasons provided for the termination. At the time of the termination, there was an age-discriminatory comment, and there were two other comments that go to attitude. Nothing was expressed about poor performance. Poor performance was only given as a reason in the context of this litigation. So we do have the inconsistency that counsel was referring to in this case. But there were complaints at this time and prior years about his performance. I mean, Philip Cohen was not one to hold back his feelings. Right. Actually... He just didn't like to fire people. He was never warned that his job was in jeopardy. Mr. Horsthoffer was never warned that his job was in jeopardy. Philip Cohen was the primary person who communicated with him, and he did not communicate as strongly as maybe Ellen Cohen would have. Was anybody ever fired before this? Do you have any information on that? I don't have any information on that. But that he was never warned about... How do you deal with the fact that three people were hired afterwards, two in their 70s and one about the same age as Mr. Horsthoffer? How do I... According to what Ms. Austin said is hire three people, two were in their 70s. We're not obligated to show that there's a policy or a systematic discrimination. The point is whether age discrimination would tip the balance in this particular case. And I wouldn't diminish the comment coming from Mr. Hamilton. Granted, he wasn't the decision-maker. But Ellen Cohen said that when he was asked why Horsthoffer was terminated, he said, you'll have to ask my father for specifics. There's no admissible testimony from the father. And moreover, the closest... Instead of saying you don't discount Mr. Cronin, answer Ms. Austin's assertion, which is you have to look under the totality of the circumstances and recognize that Mr. Hamilton was not involved in the decision-making at all. And if you do that, that's the context in which you have to view his comment. What's your response to that? My response is twofold. He was the closest person who was involved and who also was designated as the person to communicate the termination decision to the terminated person. He was the closest person who gave a reason, closest person to the decision-making, who gave a reason. You say that, although Mr. Horsthoffer said he didn't even know Hamilton's role. He thought somebody else was shop supervisor and that he really just reported to Mr. Cohen. Right. He was designated by the appellee, by Max Coniston, to deliver the decision of the decision-maker. He was the mouthpiece. And it's not fair to insulate. A company can't insulate itself by delegating the communication process away from the decision-maker. As opposed to insulating itself, can you or should we? Can we look at that in weighing it and say, this is somebody that the Coens twice removed reached out and had to deliver the bad news because they didn't want to do it. And in that context makes, as the district court appeared to, some decision about what a rational fact finder would do under the totality of the circumstances. Yes, I think it has to be weighed and taken into account with the counter side. And the court has to come to a decision. All right. Thank you. Case is well argued. We'll take it under advisement, but we can turn off.